IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FATIME I., <br><br> Claimant, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Respondent. | No. 20 CV 3603 <br><br> Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OPINION AND ORDER**

Claimant Fatime I.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Acting Commissioner of Social Security ("Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 6]. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c), and the parties have filed cross-motions for summary judgment [ECF Nos. 18, 23] pursuant to Federal Rule of Civil Procedure 56. For the reasons discussed below, Claimant's

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

Motion for Summary Judgment [ECF No. 18] is granted and the Commissioner's Motion for Summary Judgment [ECF No. 23] is denied. This matter is remanded to the Social Security Administration for further proceedings consistent with the Court's Memorandum Opinion and Order.

## PROCEDURAL HISTORY

On April 6, 2017, Claimant protectively filed a Title II application for DIB alleging disability beginning on July 3, 2016. (R. 145–46). Her claim was denied initially and upon reconsideration, after which she requested a hearing before an Administrative Law Judge ("ALJ"). (R. 98–102, 103–107, 108–09). On April 3, 2019, Claimant appeared and testified at a hearing before ALJ Janice M. Bruning. (R. 41–52, 56–57). ALJ Bruning also heard testimony on that date from impartial vocational expert ("VE") Sara Gibson. (R. 52–56, 58–59). On May 23, 2019, ALJ Bruning denied Claimant's claim for DIB. (R. 17–32).

In finding Claimant not disabled, the ALJ followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18. See 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since July 3, 2016, her alleged onset date. (R. 19). At step two, the ALJ found Claimant had a severe impairment or combination of impairments as defined by 20 C.F.R. 404.1520(c). (R. 19–20). Specifically, Claimant has headaches and depression. (R. 19–20). The ALJ also acknowledged several non-severe impairments – benign hypertension, diabetes mellitus, hyperlipidemia, venous disorder, and obesity – and considered the combined effect of those impairments in assessing the full extent of Claimant's limitations. (R. 19–21).

At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21–24). In particular, the ALJ considered listings 11.02, 11.14, 11.18, 12.04, 12.06, and 12.15 and evaluated whether the "paragraph B" or "paragraph C" criteria had been satisfied for the mental listings. *Id.* The ALJ determined listing 11.02 did not apply because the frequency and severity of Claimant's headaches did not rise to the level required by the listing. (R. 21). Nor did listing 11.14 apply, as Claimant did not have the significant disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements or gait and station required. (R. 21). Listing 11.18 was not met because the evidence did not show Claimant had experienced deficits in cognitive functioning, as described in 12.02(A), resulting in two marked restrictions under 12.02(B). (R. 21).

Regarding the mental listings 12.04, 12.06, and 12.15, the ALJ concluded the "paragraph B" criteria had not been satisfied, although Claimant had limitations in certain broad areas of functioning. (R. 21). The ALJ noted a mild limitation in understanding, remembering, or applying information, moderate limitations in interacting with others and concentration, persistence, or pace, and a mild limitation in adapting or managing oneself. (R. 23). But, because Claimant's impairments did not cause at least two "marked" limitations or one "extreme limitation," the ALJ concluded that the paragraph B" criteria were not satisfied. (R. 23). As to the "paragraph C" criteria, the ALJ concluded the medical evidence of record did not show Claimant has been receiving ongoing consistent mental health therapy that

diminishes the symptoms of her mental impairments, nor does she live in a highly structured setting. (R. 23–24). So, the "paragraph C" criteria were not satisfied. *Id.*

The ALJ then found Claimant had the residual functional capacity ("RFC") to:

"perform medium work as defined in 20 CFR 404.1567(c) except: she can never climb ladders, ropes, or scaffolding and no more than occasionally climb ramps and stairs, balance, stoop, crouch, kneel, crawl, bend, or twist. She should avoid concentrated exposure to noise at the jackhammer level or louder and work hazards, such as unprotected heights and dangerous moving machinery. The claimant should be allowed to wear compression stockings. She can understand, remember and carry out no more than simple routine tasks, with no public contact and no more than occasional contact with coworkers and supervisors. The claimant cannot perform tasks with strict quotas (not engage in work where someone is checking up on the claimant throughout the work day to make sure she is on pace with a set goal, quota or with other employees), but she can do work where her performance is measured by what is completed at the end of the workday. Finally, she cannot perform work where pace is determined by a machine." (R. 24).

Based on this RFC, the ALJ found at step four that Claimant had past relevant work as an electrical assembler. (R. 30). The mental and physical demands of this work did not exceed Claimant's residual functional capacity, and so the ALJ concluded that Claimant would be able to perform that past relevant work as actually or generally performed. (R. 30). The ALJ also concluded at step five that, considering Claimant's age, education, past work experience, and residual functional capacity, she is capable of performing other work within the national economy and that those jobs exist in significant numbers. (R. 30–31). Specifically, the VE's testimony, on which the ALJ relied, identified jobs at the medium exertional level, including cleaner, laundry worker, and assembler. *Id.* The ALJ then found Claimant was not under a disability from July 3, 2016 through May 23, 2019, the date of his decision. (R. 31). The Appeals Council declined to review the matter on April 24, 2020, (R. 1–

4

8), making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court. 42 U.S.C. § 405(g); *see, e.g., Smith v. Berryhill*, 139 S. Ct. 1765, 1775 (2019); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## STANDARD OF REVIEW

When a claimant files an application for disability benefits, he or she bears the burden under the Social Security Act of bringing forth evidence that proves his or her impairments are so severe that they prevent the performance of any substantial gainful activity. 42 U.S.C. § 423(d)(5)(A); *see Bowen v. Yuckert*, 482 U.S. 137, 147–48 (1987) (citing 42 U.S.C. § 423(d)(1)(A)). A five-step inquiry controls whether an individual is eligible for disability benefits under the Social Security Act, which the Seventh Circuit has summarized as follows:

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy."

*Butler v. Kijakazi,* 4 F.4th 498, 501 (7th Cir. 2021) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351–52 (7th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920). Claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022).

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). The reviewing court may enter a judgment "affirming, modifying, or reversing the

decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review is limited to determining whether the ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also,* 42 U.S.C. § 405(g); *Fowlkes v. Kijakazi*, 2021 WL 5191346, at *2 (7th Cir. 2021). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

However, even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not build a "logical bridge" from the evidence to the conclusion. *Wilder,* 22 F.4th 644 (citing *Butler,* 4 F.4th at 501). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *see also, Gribben v. Kijakazi,* 2022 WL 59404, at *2 (7th Cir. 2022) ("We do not reweigh the evidence

or resolve conflicts in it."). "[O]nly if the record compels a contrary result" will the court reverse the ALJ's decision. *Fowlkes*, 2021 WL 5191346, at *2 (quoting *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010)).

## ANALYSIS

### I. The Medical Opinion Evidence

Claimant first argues that the ALJ erred by discounting, in whole or in part, every medical opinion of record, including those of consultative psychological examiner Dr. J.B. Goebel and both state agency consultants. Because Claimant filed her claim in August of 2017, the ALJ correctly evaluated the medical opinion evidence pursuant to 20 C.F.R. § 404.1520c (2017). Under this new regulation, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §404.1520c(a). Instead, the ALJ should articulate "how persuasive [she] find[s] all of the medical opinions and all administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Factors to be considered in this evaluation include supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(a), (c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a); see 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will

7

be."). An ALJ's decision must explain how she considered the factors of supportability and consistency, but she is not required to explain how she evaluated the other factors. 20 C.F.R. § 404.1520c(b)(2).

Turning first to Dr. Goebel, the ALJ deemed his opinion "unpersuasive" because "it is inconsistent." (R. 29). The Court cannot be sure what this means, because the ALJ does not elaborate on what record evidence was purportedly inconsistent with Dr. Goebel's opinion. The Court assumes it is Claimant's activities of daily living because the ALJ goes on to provide examples of activities that somewhat address Claimant's ability to sustain concentration and persistence. (R. 29) ("For example, Dr. Goebel also found the claimant capable of sustaining concentration, persistence, and pace to handle funds. Additionally, the claimant is able to maintain concentration and persistence to watch movies, drive, go out alone without getting lost, as she attended her appointment with Dr. Goebel alone, thus showing she is able to concentrate enough to go to new places.") (internal citations omitted). This comprises the whole of the ALJ's explanation for discounting Dr. Goebel's opinion.

The ALJ did not provide sufficient reasons for disregarding Dr. Goebel's opinion, making her analysis unsupported by even the low bar of more than a mere scintilla of evidence. *Biestek*, 139 S. Ct. at 1154. She does not appear to have considered whether Dr. Goebel's opinion was supportable or consistent with the record as a whole, which is one of "the most important factors" the ALJ should consider in determining the persuasive value of a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). She does not cite to a single medical finding in evaluating Dr.

8

Goebel's opinion, and given that Dr. Goebel reviewed Claimant's treatment notes, interviewed Claimant, and authored a mental status examination during the relevant period regarding her limitations, (R. 434–37), more discussion by the ALJ was required under the regulations.

The ALJ also did not address, at least to this Court's satisfaction, the opinions of the state agency consultants, which are now considered prior administrative medical findings. 20 C.F.R. § 404.1513(a)(5). The ALJ rejected the consultants' opinions that Claimant should be restricted to one- to two-step tasks and had moderate limitations in understanding, remembering, and applying information because they were "not supported by the record." (R. 28). More discussion of Claimant's activities of daily living followed – namely, Claimant's ability to drive and brush her teeth – after which the ALJ also noted that the state agency consultants' opinions were internally inconsistent because they reported Claimant was mildly limited in her ability to interact with others, but moderately limited in public contact. *Id.* No citations to medical findings or objective medical evidence appear in the ALJ's discussion. *Id.*

As with a medical source opinion, "the most important factors" in evaluating a prior administrative medical finding are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). But the ALJ addressed neither when she rejected the one- to two-step task limitation and moderate limitation in understanding, remembering, and applying information both consultants thought was necessary to accommodate Claimant's limitations in the workplace. Simply stating, without elaboration or support, that their opinions were "not supported by the record" does not provide this

9

Court an avenue for meaningful review of that conclusion. This error, together with the ALJ's cursory treatment of Dr. Goebel's opinion, requires remand. *Stevens v. Kijakazi,* 2022 WL 1000598, at *7 (E.D. Wis. 2022) (citing *Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (per curiam); *Starman v. Kijakazi,* 2021 WL 4459729, (E.D. Mo. 2021)).

On remand, the ALJ should be careful not to place outsized importance on Claimant's activities of daily living in evaluating the medical opinion evidence, Claimant's subjective symptom testimony, and ultimately, in determining Claimant's RFC. (R. 27, 635). Activities of daily living can provide valuable insight into a claimant's functional abilities, but an ALJ must be careful not to go too far and "equate the ability to engage in some activities with an ability to work full-time, without a recognition that full-time work does not allow for the flexibility to work around periods of incapacitation." *Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014) (citing *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013); *Carradine v. Barnhart*, 360 F.3d 751, 755–56 (7th Cir. 2004); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)). This is particularly true here, where the nature of the disability alleged (severe migraines and headaches) might permit entirely symptom-free days on which basic activities of daily living might be accomplished. *Moore*, 743 F.3d at 1126. That is, if Claimant has an incapacitating migraine once or twice a week, that still would allow her most of the week to complete household chores or the other activities of daily living activities the ALJ cited in her opinion. But an employer probably would not be so understanding.

10

Overall, the persuasiveness of Dr. Goebel's opinion and the prior administrative medical findings were crucial to the ALJ's decision. Those opinions, together with that of Claimant's treating physician Dr. Boyd, provided the deepest insight into Claimant's limitations and should have helped inform the ALJ's RFC assessment in a meaningful way. Because the ALJ did not address the supportability and consistency of those opinions, remand is required.

## II. Remaining Issues

The Court is remanding only on the error identified above regarding the ALJ's treatment of the medical opinion evidence. But remanding on this basis is likely to affect the other two issues Claimant raises in this case, as the ALJ's longitudinal view of the medical record is intertwined with how Claimant's limitations – namely, her headaches – are ultimately accommodated in the RFC assessment and how the ALJ evaluates Claimant's subjective symptom testimony. The Court, accordingly, sees no need to lengthen this Memorandum Opinion and Order by addressing Claimant's other arguments in a case that is being remanded anyway. Nor would the Court's assessment of the other disputes Claimant posits change the result in this case, which is to remand for further proceedings and a more fulsome assessment of potential jobs available to an individual with Claimant's limitations. The Commissioner, however, should not assume that the Court agrees with the ALJ's analysis of those issues. Claimant should make no assumptions either.

In conclusion, the Court expresses no opinion about the decision to be made on remand but encourages the Commissioner to do what is necessary to build a logical bridge between the evidence in the record and her ultimate conclusions, whatever

11

those conclusions may be. *See, e.g., Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions"); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994).

## CONCLUSION

Accordingly, for all these reasons, Claimant's Motion for Summary Judgment [ECF No. 18] is granted and the Commissioner's Motion for Summary Judgment [ECF No. 23] is denied. This matter is remanded to the Social Security Administration for further proceedings consistent with the Court's Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: September 30, 2022